## MARY B. BARTON *v.* L. W. MAGRUDER ET AL.

RESULTING TRUST. *Land sold under decree. Purchase-money advanced.*

> Where land is sold under a decree, by agreement of all parties, it being bought in by one who is interested in the decree as mortgagee, and who receives a deed undertaking to hold the title for the benefit of defendant, the original owner, who advances a part of the money to buy it in, may enforce a resulting trust against the purchaser for the amount so advanced, though the agreement in respect to the title is by parol.

FROM the chancery court of Wilkinson county.
HON. CLAUDE PINTARD, Chancellor.

The appellant, Mary B. Barton, in her bill exhibited against L. W. Magruder and Mary J. Magruder, alleged substantially the following facts:

She was the owner of a plantation in Wilkinson county, of the value of about $10,000. In 1868, having been the guardian of her four children, Mary J., Thomas H., Douglas N., and E. H. Walker, she was indebted to the three last named, on account of her guardianship, in the sum of $4,470, to secure which she executed a trust-deed on said plantation. She was also indebted to her daughter, Mary J. Walker, now Mary J. Magruder, one of the defendants in this case, in the sum of $1,000 on account of said guardianship. It became necessary for her to borrow money about that time, and she did borrow $5,000 from one Rodney, and secured the same by trust-deed on said plantation. Her three sons above named, in order to enable her to effect this loan, voluntarily canceled the trust-deed on the land given for their benefit. Out of the money borrowed from Rodney, complainant paid the balance in full due by her to her daughter, who, after that time, made no further claim on her as to this.

In 1878 Rodney required payment of the money loaned by him. That was a time of financial depression. Com-

plainant was unable to pay the debt, and the plantation was advertised for sale under the trust-deed. About that time she learned that one Thomas O. Woods had money that he would loan on the security of said plantation, provided the property could be freed from any and all claims of the children. She had, before this, settled in full with her son, Douglas N. Walker, and had secured the amount due James H. and E. H. Walker by a trust-deed on said plantation, executed April 4, 1874.

Affairs standing thus, complainant placed the matter of determining upon some plan by which said Woods might be made secure, in the hands of her attorney, who counseled with an attorney then representing the defendants, Mary J. Magruder and her husband, L. W. Magruder. Together, they all agreed that the said Mary J. Magruder should file a bill, setting up a claim against appellant, her mother, on account of a pretended balance due her as ward. The said Rodney was to be made a party defendant, and the sale under his trust-deed was to be enjoined, and appellant was to make no defense, and it was agreed that the land was to be sold under a decree thus to be rendered in favor of Mary J. Magruder, and that the said Thos. O. Woods was to purchase the same and hold the title as security for the money to be advanced by him. This sum was to be repaid to him within three years, and the rents of the place were to be applied for that purpose. Upon payment of the sum due him, Woods was to convey the property to said Mary J. Magruder, who was to hold the title as trustee for her mother until the entire incumbrance was paid off. This scheme was agreed to by the mother and all the children, and the two sons, James H. and E. H. Walker, consented to waive all rights under their trust-deed, which was of record, and the said Mary J. Magruder agreed to accept the trust on the terms stated.

Accordingly, a bill was filed by said Mary J. Magruder, against her mother and the said Rodney, and an injunction was granted, staying the sale under Rodney's trust-deed. No

defense was made by the mother, and a decree was entered against her in favor of the said M. J. Magruder, and a decree also in favor of Rodney for the amount due under his trust-deed, and the plantation was sold December 8, 1879, under the decree, and was bought in by the said Thomas O. Woods for $5,635.30. Of this sum the said Woods advanced $4,000, and appellant paid the balance of $1,635.30. It was understood at the time that said Woods held the title merely as security for the money so advanced by him, and, in pursuance of the understanding, in November, 1882, he conveyed the land to the said M. J. Magruder, on payment to him of the $4,000 advanced by him, with interest thereon. To make this payment, the appellees, M. J. and L. W. Magruder, or one of them, borrowed $4,000 from one Morgan, and secured him by a trust-deed on the plantation.

The said Thomas O. Woods agreed to apply the rents of the plantation during his occupancy to the indebtedness due him, but he failed to do this, and paid over to the appellees, or one of them, the proceeds of the crops grown on said plantation during the years 1880, 1881 and 1882, which would have been sufficient to reduce the $4,000 debt at least one-half.

In the deed from Woods to said M. J. Magruder, the consideration was stated to be $5,635.30, whereas, the consideration actually paid was the $4,000, with interest, and this sum was obtained by appellees from Morgan.

At the time of the conveyance of the plantation by Woods to said M. J. Magruder, she, regardless of the trust above stated, conveyed the said plantation to L. W. Magruder, her husband. The said L. W. Magruder and wife have received the income of said plantation since the conveyance from Woods. The income was large, and should have satisfied said incumbrance. The original debt is still unpaid, and, with interest, amounts to the sum of $5,000, and is now due to D. C. Bramlett, from whom the said L. W. Magruder and wife have borrowed money on mortgage in order to pay Morgan.

The bill in this case was filed August 9, 1890, and set forth the above facts. It also alleged that it was the evident design of the defendants, L. W. Magruder and wife, to disregard the trust assumed by the latter, and to deprive complainant of her equitable interest in said plantation. As evidence of this, it was charged that, besides executing a mortgage to the said D. C. Bramlett to secure the $5,000, the said Magruder and wife had effected a further loan of $2,000, and had secured the same by trust-deed on the plantation.

The bill also contains this statement: "Complainant further shows that she has never given up the possession of said property, or failed to assert her equitable claim thereto, but she continued to reside thereon until when she was forced to remove from said plantation, by reason of the dwelling-house thereon being permitted, by the neglect of defendants and her own want of means, to become untenantable; that she has continuously, since the conveyance of her said land to L. W. Magruder by his wife, demanded of them that the said original debt be paid out of the income of said plantation, and that her property be restored to her as agreed on, as aforesaid, and that she has constantly been put off with evasive answers and promises."

The bill called for discovery from the defendants, and an account of rents and of moneys paid them, or either of them, from the income of the plantation, and also asked for an injunction prohibiting the defendants from disposing of the property or further incumbering it, and a decree requiring the defendants to convey the plantation to complainant, and to pay her all such sums as may be found due from them on account of rents.

An amendment to the bill was filed, in which the foregoing facts were elaborated somewhat, and in which complainant stated that she had intrusted the management of her business, in a great measure, to her children, and had relied upon them to carry out the arrangement agreed upon for the protection of her interest; that she had great confidence in them all,

and, being very old, had intrusted the details of the business to them, and had acted as they directed without particular inquiry into the matters, never supposing that any advantage would be taken of the confidence reposed. It was alleged that the said Woods had carried out his part of the scheme in good faith, and had conveyed the property to Mary J. Magruder, to be held by her for complainant until the $4,000, with interest, should be repaid out of the income of the plantation ; that the assertion of exclusive ownership by said Mary J. Magruder and her husband was not made until several years after they secured the title.

The defendants demurred, averring that the bill showed no right of relief; that the alleged agreement in respect to the title, being by parol, was void under the statute of frauds, and that complainant was barred by the statute of limitations.

From a decree sustaining the demurrer and dismissing the bill, complainant appeals.

*J. H. Jones,* for appellant.

1. The bill was filed within ten years after the adverse assertion of title by defendants, and hence complainant was not barred. The statute could not be put in operation until there was a denial of her rights. 1 Perry on Trusts, § 141; 2 *Ib.,* 863, 864; Wood's Lim., § 219; *Westbrook* v. *Munger,* 61 Miss., 329; 7 Johns. Ch., 122; 18 N. H., 340; 33 Minn., 338.

2. The statute does not run in favor of transactions tainted with fraud. Wood's Lim., § 212; 2 Story, Eq. Jur., § 1520; 6 Wheat., 481; 4 Dess. (S. C.), 474; 118 Ill., 275.

3. The statute does not run against a continuing trust. *Soggins* v. *Heard,* 31 Miss., 426; *Pinson* v. *McGehee,* 44 *Ib.,* 229.

4. The bill shows an implied trust. When Woods bought in the land he only paid $4,000. Complainant herself advanced $1,635.30. The defendants have really paid nothing. The property was, in fact, purchased from Woods with complainant's own money, and then the title was taken in the

name of her daughter.  This meets all the conditions of a resulting trust, and such a trust is not within the statute of frauds.  1 Perry on Trusts, § 125; *Soggins* v. *Heard*, 31 Miss., 426; 18 N. H., 340; 80 Ill., 360; 118 *Ib.*, 275; 4 Dess. (S. C.), 474; 113 Mass., 95; 4 Mon. (Ky.), 505; 3 G. Green (Iowa), 527; 6 Sarg. & Watts (Pa.), 97; 58 Pa., 485; 1 Paige Ch., 147; 6 *Ib.*, 355; 18 N. Y., 515; 28 *Ib.*, 568; 97 Ind., 70.  I call the attention of the court specially to *Jenkins* v. *Eldridge*, 3 Story, 181, which I consider decisive of this case.

*A. G. Shannon*, for appellees.

1. The bill shows that the land was sold, under the decree, December 8, 1879, and complainant was barred in one year from that time.  Code 1880, § 2173.

2. If complainant advanced a portion of the money paid for the land at the sale, as alleged, this does not vary the fact that it was paid.  Any amount advanced by her was paid in liquidation of the judgment against her, and in excess of what Woods was willing to pay.  The amount paid by Woods was advanced in pursuance of a previous agreement that he should buy in the place, and take the title for that amount.  His title had become complete, and the statute had run in his favor before he conveyed the property to Mrs. Magruder.  But the defendants and Woods always set up title to the property, and from the first had possession, and appropriated the rents, not recognizing any right whatever in complainant.  Consequently, the ten years' statute had run before suit.  *Hartman* v. *Nettles*, 64 Miss., 495.

3. This is an attempt to enforce a parol trust in land.  While much confusion has arisen elsewhere on account of judicial exceptions ingrafted on the statute, in this state the courts have constantly upheld its letter and spirit; and, as a result, our decisions are few and harmonious.  Among others, see especially *Fisher* v. *Kuhn*, 54 Miss., 480, and *Metcalf* v. *Brandon*, 58 *Ib.*, 841.

4. The complainant was represented throughout by her

attorney.    There is no pretense that defendants, or either of them, ever used any undue influence on complainant or her attorney.

CAMPBELL, C. J., delivered the opinion of the court.

This case suggests, rather than presents, a state of facts like *Robinson* v. *Leflore*, 59 Miss., 148.    The bill speaks of a loan by Woods, and of his re-imbursement, but does not distinctly aver that the advance of the money was as a loan to the complainant.    It is evident that this was the real nature of the transaction, and that the desire to save the land to her was the object for which the money was furnished and applied to the purchase of the land; and, if the bill had been framed in this view, the demurrer would have been overruled; but we are not prepared to say that it was not properly sustained in this aspect of the case.

There is, however, a feature of the bill which entitles the appellant to a reversal of the decree.    It is averred that the complainant paid part of the purchase-money to vest the title of the land in Woods; and, to the extent that her money was paid for this, there was a resulting trust in her favor, and she may enforce it.

The bill should be remodeled to meet the necessities of the case as we suppose it to be.

*Reversed, demurrer overruled and cause remanded, with leave to defendant to answer in thirty days after mandate filed, and for the complainant to amend her bill as she may be advised.*