STONE, CHAIRMAN *v.* SAMPLE.

Jan. 19, 1953

No. 38621 16 Adv. S. 46 62 So. 2d 307

288

*Henry A. Fly,* for appellant.

*Tighe & Barksdale,* for appellee.

ROBERDS, P. J.

This proceeding involves the legality of a back income assessment by the State Tax Commission against Clark Sample. The trial court disaffirmed the assessment and the Commission appeals.

The question arises under these circumstances: About the year 1940 Sample purchased certain mineral rights in this State. He was then, and for many years had been, a married man and a resident citizen of Texas. The money used by him in purchasing the mineral interests belonged in equal part to himself and his wife as community property under the laws of Texas. The conveyances were to Sample alone. Royalties had been paid upon such minerals for a number of years. This was done by checks to Sample. He deposited the checks in a community account of himself and wife in a Texas bank—in fact, the same account from which the funds had been withdrawn to pay for the minerals. From the time income began to be realized from oil production upon the property, beginning about 1941, Sample had made income tax returns to the State of Mississippi upon such income in the name of himself and wife, and had paid the tax by checks drawn upon the same bank account in Texas. No question had been raised by the Tax Commission to this manner of reporting and paying taxes until the year 1951, when the Commission contended the returns for taxes should have been based upon the income of Sample alone, instead of jointly with his wife, thereby placing Sample in a higher income bracket and increasing the annual tax. On January 18, 1952, the Commission, after a hearing, made an addi-

tional income assessment against Sample in the aggregate amount of $1,264.53 for the years 1947, 1948 and 1949, with interest thereon from the due dates of said amounts for the respective years. On appeal by Sample the circuit court held that the additional assessment was illegal and void. The above stated facts are not in dispute.

Section 9222, Miss. Code 1942, imposes a tax, at the rate specified in that section, upon the net income from all property "owned" in this state by nonresidents of Mississippi.

Sample contends that, while he holds the legal title to the minerals, they were purchased by joint funds of himself and wife and he holds such title in trust for himself and wife, and the property and income therefrom, in equity and in fact, is the joint property of himself and wife. The Commission says the trust is illegal and of no effect under Section 269, said Code, requiring all trusts in land in Mississippi, to be in writing and recorded, else they are void. ■■ ■ But that Section, by its express terms, has no application to resulting and constructive trusts, and this Court, in construing and applying that section, has so held in cases too numerous for citation. ■■■ And, if it be true, and the fact is not contested here, that half of the purchase price of the minerals was the property of Mrs. Sample, then a trust resulted in favor of Mrs. Sample and he holds title in trust to her one-half interest. Barton v. Magruder, 69 Miss. 462, 13 So. 839; Tanous v. White, 180 Miss. 566, 191 So. 278; Ryals v. Douglas, 205 Miss. 695, 39 So. 2d 311; Chichester v. Chichester, 209 Miss. 628, 48 So. 2d 123. How she came by the money is not material. Here she was the owner by virtue of the community laws of Texas. The result is the same as though she had acquired ownership by inheritance or gift or in any other lawful manner. The controlling fact is she was the owner. The source of her title, or ownership, is immaterial.

 The Commission says Mr. Sample—not Mrs. Sample—is asserting the trust and he cannot do that. No authority is cited for the stated proposition. However, the assumption that Mrs. Sample is not claiming the benefit of the trust is not well taken. Through the years the returns upon the income from the property have been made and the taxes have been paid in the joint names and out of the common funds of Mr. and Mrs. Sample. Mrs. Sample has thereby made claim to one-half of the income since income began to accrue.

 The Commission invokes the rule that real property is controlled by the law of its situs. That, of course, is true. This is not an effort to transport the Texas community law into this state. The title of Mrs. Sample to a half interest in the property in Mississippi does not result from application of the community law of Texas to the real property in Mississippi. The trusteeship comes about as a result of using her money in the purchase of the property regardless, as above stated, how or where she acquired title to the money. The same result would have come about had she acquired such title in a noncommunity property state. There is no prohibition against a nonresident of Mississippi asserting a resulting trust in lands in this state.

 The Commission says Sample is estopped to assert dual ownership. Assuming but not deciding, that the Commission is in position to invoke estoppel if it exists, we cannot see that the doctrine applies here. Mrs. Sample has not been misled, or caused to act to her detriment; besides, as stated, both parties have recognized the joint ownership since the minerals were acquired.

The Commission urges that it would be unable, or, at least, put to great disadvantage, in endeavoring to collect the tax against Mrs. Sample; that if warrant were issued against the land, as provided by Section 9248, said Code, to collect the tax owing by Mrs. Sample, it would be served upon land to which Mrs. Sample has no

title. That, however, begs the question. Had that procedure been adopted, the question of true ownership would then, as now, have been involved, and subject to be established. However, with joint returns having been made through the years, Mrs. Sample would not have been in good position to deny that she was the owner of a one-half interest in the property. And certainly she could not successfully do so now after asserting, in the manner shown by this litigation, her claim thereto. Besides, the difficulty in collecting the tax could not determine the rights of the parties to the property.

The Commission cites Hammonds v. Commissioner of Internal Rev., 106 Fed. 2d 420; Commissioner v. Skaggs, 122 Fed. 2d 721, and Jones v. Trapp, 186 Fed. 2d 951. But the facts of those cases are not the same as in the case at bar. In the first case, Hammonds and wife lived in Oklahoma. That State has no community property law. Mrs. Hammonds, by her labor acquired oil and gas leases in Texas. These were sold at a profit. Hammonds and wife treated these leases and the profit as community property, and made tax returns charging themselves, each, with half of such profits. The Commissioner disallowed this return and charged the wife with the entire profit. In Texas whatever is gained by the labor of either spouse is community property. The court held that the leases, so acquired by labor and services of the wife, became community property. It said: ". . . that real property acquired in the state of Texas during coverture by the toil, talent, or productive faculty of either spouse is community property, irrespective of the residence of the spouses." The court further said: "The general rule in the community property states that marital rights in lands, regardless of the residence of the husband and wife, are regulated by the law of the situs is subject to the qualification that where property is acquired in a community property state, through purchase by funds which are the separate prop-

erty of one of the spouses, or in exchange for separate property of one of the spouses, the character of the funds or of the property given in exchange is transmitted to the property acquired." Under that rule the minerals purchased by Sample with community funds of himself and wife became community property.

In the second case, Skaggs lived in Texas. In 1926 when unmarried, he acquired stock in a Texas corporation. He married in 1929, and continued to reside in Texas. He then sold the stock at a profit. The court held that this profit, realized from property acquired by him before marriage, was his separate property. Also, in 1926 Skaggs acquired a building in California. In 1934 the rents thereon amounted to $11,468.00 net. The court held the rents to be separate property under the California law. It is at once seen that the question with which we are here dealing was not involved in that case.

In the Jones case the husband earned money in the bond business in Oklahoma, where he and wife resided, and which has no community property law. He used this money to partly pay for oil and gas leases in Texas, which is a community property state. He also partly paid for said leases by his labor, talent and skill. The court held that the part of the leases acquired from the bond business was separate property, but that which he acquired by his talent and labor constituted marital property. Thus, it is seen, the facts of neither of the three cases coincide with the facts of the case at bar, but the legal principles, by analogy, announced in all of them, support the contention of the taxpayers in the case at bar.

In Chichester v. Chichester, supra, this Court used this language: "Cases involving questions of resulting trusts have often been before this court. The following principles are recognized and declared by this Court: If one buys land in the name of another and pays the consideration therefor, the land will be held by the gran-

tee in trust for the benefit of him who advances the purchase money; and if there has been only a partial advance of the purchase money a trust will result pro tanto. The foundation of the trust in such cases is that the property really belongs to him whose funds have paid for it." The same rule exists in Texas. Dorsey v. Temple, (Tex. Civ. App.) 103 S. W. 2d 987. In Tomaier v. Tomaier, (Sup. Ct. Cal.) 146 P. 2d 905, the court said: "Property rights are not lost simply because property is transported into another state and exchanged there for other property." In Edwards v. Edwards, 108 Okla. 93, 233 P. 477, the spouses had acquired community money while residents of Texas. They moved to Oklahoma which had no community property law. The husband invested the money in real property, taking title in the name of another. The court established a trust for the benefit of the wife in the property so acquired.

Poe, Collector of Int. Rev. v. Seaborn, 282 U. S. 101, 75 L. Ed. 239; Hopkins, Com. of Int. Rev. v. Bacon, 282 U. S. 122, 75 L. Ed. 249, and Johnson v. Com. of Int. Rev., 88 Fed. 2d 952, (Rehearing 105 Fed. 2d 454) sustain the contention of the taxpayers in the case at bar. In the Johnson case taxpayers, husband and wife, formerly resided in Texas, where they accumulated community property. In 1899 they moved to Missouri. They liquidated the Texas property and invested and reinvested the proceeds in other property, some of which was in Missouri, the legal title being taken in the husband. The Commissioner contended the husband should pay the entire tax on the total income from such property. The court said: "Therefore, one-half of the income derived from the assets acquired with the proceeds or increment of the original community property was not taxable to the taxpayer but to his wife. The Board . . . should have afforded him an opportunity to produce evidence to show whether it would be possible to ascertain what portion of the assets possesssed by him

and what portion of the income received by him during the years in question were trust assets and trust income not taxable to him." Again, "When the taxpayer and his wife left Texas what was community property at the time continued to be community property. One-half of that property thereafter the taxpayer held in trust for his wife. He continued to manage the property he and his wife owned as if it were his property."

In Vining, et al. v. Smith, 213 Miss. 850, 58 So. 2d 34, Mrs. Vining had an automobile wreck in Poplarville, Mississippi, while driving an automobile which was community property of herself and husband, who were residents of Louisiana. The husband was not in the automobile when the accident occurred. Plaintiff attached the automobile. The claim was made that she had no interest in the automobile, that it belonged to her husband, and that especially was that true since the automobile had been brought into Mississippi, having no community property law. Responding to that contention this Court said: "The status of the automobile here in question having been fixed by the law of Louisiana as community property, and there being no serious dispute in the evidence as to that fact, we conclude that the status did not change when Mrs. Vining crossed the state line on a temporary mission and that consequently the chancellor was correct in his decree to that effect . . ."

We think the holding of the chancellor was correct.

Affirmed.

*Kyle, Holmes, Arrington* and *Ethridge, JJ.,* concur.

---

ON SUGGESTION OF ERROR

March 23, 1953 25 Adv. S. 60 63 So. 2d 555

ETHRIDGE, J.

The suggestion of error is based primarily upon Moss v. Ardrey, 169 S. W. 6 (Mo. 1914), not cited by appellant

in his original brief, and upon an argument that the *Moss* case supports the principal position of appellant, namely, that a resulting trust can be created only where the beneficiary comes into court and asks that a trust be established in opposition to the legal title, and that such cases do not allow a holder of legal title to establish an equitable interest in another person in opposition to his own title. Hence appellant says that since this was not a resulting trust, Sample necessarily claims as an express trustee for his wife of one-half of the income, and such oral, express trust is unenforceable under Code of 1942, Section 269, the Statute of Frauds.

However, this position has no merit for several reasons. In the first place, the issue is not whether this is a resulting trust, but whether the state income tax law, which taxes nonresidents upon the net income from all property "owned" in this state, supports the assessment of the entire income to Sample. We have affirmed the chancery court's ruling that the assessment is not within the terms of this taxing statute. Mrs. Sample is the owner of one-half of the income from the property. Johnson v. Commissioner of Internal Revenue, 88 F. 2d 952 (C.C.A. 8th 1937), on second appeal in 105 F. 2d 454 (1939), discussed in the original opinion, is directly in point in support of this holding.

Secondly, as was stated in the original opinion, "the assumption that Mrs. Sample is not claiming the benefit of the trust is not well taken." And thirdly, Moss v. Ardrey, *supra,* is clearly distinguishable from the present case. That controversy was between the heirs of the alleged beneficiary and the heirs of the alleged trustee. The heirs of the wrongdoer were undertaking to impose a resulting trust so as to perpetuate the wrong, and the court obviously denied their petition. Here the taxpayer has always recognized his wife's one-half interest in the property and the income from it, and the appellant has for many years without protest until 1951 accepted re-

turns on that basis. We do not need to consider whether a resulting trust can be established alone by the holder of the legal title so as to create an equitable interest in another person in opposition to his own title, because the record is undisputed that Mrs. Sample has always claimed the ownership of one-half of the income from this property, and that is the incident of the income tax in question.

Suggestion of error overruled.

*Roberds, P. J.,* and *Kyle, Holmes* and *Arrington, JJ.,* concur.