876 So.2d 1059 (2004)
In the Matter of the ESTATES OF Armine B. GATES and C.V. Gates, Deceased.
Roland Dear and Lottie S. Causey, Appellants
v.
George Glynn Boggan, Sr., et al. (Heirs of Armine B. Gates) and Ruth B. Lewis, et al. (Heirs of C.V. Gates), Appellees.
No. 2002-CA-01711-COA.
Court of Appeals of Mississippi.
June 29, 2004.
*1062 David Ringer, attorney for appellants.
Terrell Stubbs; David Sessums, attorneys for appellees.
Before SOUTHWICK, P.J., IRVING and GRIFFIS, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. The Chancery Court of Simpson County found that two individuals did not establish an effective trust prior to their deaths. We agree and affirm.

FACTS
¶ 2. Armine and C.V. Gates expressed a desire to create a trust for the plaintiffs, Roland Dear and Lottie Causey. Dear transported Mr. Gates for medical care and took care of other needs. Dear testified that he often took food to the Gates couple and visited them when they were hospitalized. Dear claims that in February 1997, Mr. Gates informed him that he would be favored upon their deaths because of his service in taking care of them. No one else heard that statement.
¶ 3. Causey, a first cousin of Mr. Gates, also states that she had a special relationship with him and his wife. They would visit each other on average at least once every two weeks. It was during one of these visits that Causey claims Mr. Gates informed her that he "got a trust started" and requested that she serve as a trustee. It is alleged that Mrs. Gates had no living relatives and that among Mr. Gates's first cousins, it was only towards Causey that he felt any closeness.
¶ 4. Mr. and Mrs. Gates were killed in an automobile accident on October 8, 1997. They died intestate. A claim was filed in their estate proceedings that a trust had been created by the Gates to benefit Roland Dear, Lottie Causey, and two community churches. The trust document, which was never approved nor signed by either Gates, is dated November 18, 1997  after their deaths. There was testimony about the origins of this document. In the spring of 1997, Mr. Gates and Roland Dear attended a trust seminar sponsored by an attorney, Sylvia Owen. Some time after the seminar, Mr. Gates visited Owen's office to discuss the terms of the trust. Mr. Gates gave Owen handwritten documents outlining the provisions of the trust. One of the documents was allegedly written by Mrs. Gates. The third and final visit that they had was on September 30, 1997. Owen never met Mrs. Gates. Owen drafted the trust document from the handwritten notes. Even though Owen had prepared a draft trust document in April 1997, neither Gates saw, approved, or signed the document prior to their deaths on October 8, 1997.
¶ 5. The chancellor found that no trust existed, whether express or implied.

DISCUSSION
¶ 6. There is no question that, prior to their deaths, Armine and C.V. Gates had not executed any documents creating a trust to benefit the plaintiffs in this case. An inventory of the estate revealed substantial real and personal property that would be the subject of the trust. We analyze below the several allegedly adequate substitutes for an executed trust document.

*1063 1. Express trust from handwritten notes or unexecuted draft trust document

¶ 7. Dear and Causey claim that the lower court erred in refusing to admit into evidence hand-written notes allegedly written by Mrs. Gates. They claim that these notes represent declarations by Mrs. Gates as to what should be included in the written trust agreement. The attorney Owen testified that the notes were delivered to her by Mr. Gates and that she had never met or talked with Mrs. Gates. She stated that she believed the notes were written by Mrs. Gates, even though she did not witness the writing or discuss the notes with Mrs. Gates.
¶ 8. A person testifying for purposes of authenticating a writing need not witness the writing. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." M.R.E. 901(a). The chancellor found that these notes were not adequately proven to have been written by Mrs. Gates, nor that they were a true indication of her desires for the trust. We find no abuse of discretion in that ruling, as Owen's only information was hearsay from Mr. Gates.
¶ 9. Even had the notes been admitted, they would not have been sufficient to impose a trust. An express trust may be oral, but only if real property is not involved. Alvarez v. Coleman, 642 So.2d 361, 367 (Miss.1994); Miss.Code Ann. § 91-9-1 (Rev.1994). If the corpus of the purported trust estate consists both of real and personal property, an express oral trust is ineffective to impose a trust on either. Wells v. Brooks, 199 Miss. 327, 24 So.2d 533, 535 (1946) ("where the agreement includes both realty and personalty, the transaction is not separable" for purposes of the statute of frauds).
¶ 10. Finally on the issue of the notes, we conclude that they are not evidence of an express oral trust. A clear oral declaration that a trust is being created is needed for an express oral trust of personal property. There is no evidence that either of the would-be creators of the trust ever declared that they were by oral statement creating an express trust. There may have been assertions of a desire to create a written one. In fact, the written but unsigned proposed trust agreement in the record is an indication that neither of the deceased intended orally to create an express trust. The notes similarly indicate that no declaration of oral trust was intended. There is no evidence that the Gates couple intended to have any of their oral statements constitute an effective trust. We address below whether a constructive trust arose from some of these statements, but no express trust did so.
¶ 11. Dear and Causey also claim that the draft trust agreement itself, not signed by the Gates couple before their deaths, created an express trust. As already indicated, an express trust must be in writing if it involves real property. Chichester v. Chichester, 209 Miss. 628, 630, 48 So.2d 123, 124 (1950). The trial court was presented with a document prepared by an attorney which was a writing. An express trust also must be signed. Triplett v. Bridgforth, 205 Miss. 328, 349, 38 So.2d 756, 762 (1949). The trust document was not signed. The trust document was prepared on November 18, 1997, over a month after the car wreck that took the lives of Mr. and Mrs. Gates.
¶ 12. A person's initial handwritten explanation of her desires for a will or a trust, no matter how clearly and *1064 conclusively expressed, do not take on the character of the final executed document should the person die or become incapacitated prior to completion of the document. There are formalities for the execution of either document, which bring to the attention of the person the significance of the interests being created. Though either kind of document often may after execution be amended, until such amendment, the original terms remain in effect. On the other hand, until execution, the thoughts and written notes and drafts remain merely possibilities, subject to alteration or total abandonment by the creator of the interests.

2. Implied Trust
¶ 13. In the alternative, we examine whether an implied trust was created. Both constructive and resulting trusts are concepts of equity. A person claiming that either type of trust exists has the burden of proving the elements of those trusts by clear and convincing evidence. Allgood v. Allgood, 473 So.2d 416, 421 (Miss.1985).
¶ 14. A constructive trust arises in order to prevent unjust enrichment by a person gaining property which rightfully belongs to someone else. McNeil v. Hester, 753 So.2d 1057, 1064 (Miss.2000). The attorney who prepared the trust document testified that she had no knowledge that either Armine or C.V. Gates had any indebtedness to the plaintiffs. She knew of no fraud practiced by the couple against those seeking to impose the trust. She was not aware of any unconscionable conduct by them towards the plaintiffs.
¶ 15. The plaintiffs, Causey and Dear, had no contrary evidence. They testified that Mr. and Mrs. Gates did not owe them any money, did not benefit financially at their expense, and were not holding any property that was rightfully owned by Causey and Dear. Dear testified that he had changed his financial position in reliance on an oral promise made by Mr. Gates regarding a trust, a promise that no one else heard. An examination of Dear's tax returns did not support this assertion.
¶ 16. There was no clear and convincing evidence of a constructive trust that should be imposed on the property that was in the estate.
¶ 17. In the alternative, a resulting trust arises in a transaction when one person is granted a legal title but is required to hold this title for the benefit of another.
A resulting trust arises from the acts of the parties, or may be deducible from the nature of the transaction, although not expressed by the words of the parties. While a constructive trust is designed to prevent fraud, overreaching or the like, by which one person has obtained legal title to property rightfully belonging to another, a resulting trust is "designed to give effect to the unwritten but actual intention of the parties at the time of the acquisition of title to the affected property."
Robert E. Williford, Trusts, in 8 ENCYCLOPEDIA OF MISSISSIPPI LAW § 73:2 (Jackson & Miller 2001), at 422 (footnotes omitted). The trustee and beneficiary of a resulting trust must have mutually agreed to the manner in which title to property was to be held and subsequently an inequity occurs when the trustee is unwilling to fulfill the original agreement. Simmons v. Simmons, 724 So.2d 1054, 1057 (Miss.Ct.App.1998). Here, there is no proof whatsoever of that.

3. Default Judgments
¶ 18. Dear and Causey argue that the trial court erred in setting aside *1065 default judgments against some defendants who failed to file responsive pleadings in a timely manner. Three of the approximately thirty Gates heirs did not timely file answers. Whether a default judgment is set aside is left to the discretion of the trial court. King v. Sigrest, 641 So.2d 1158, 1162 (Miss.1994). Dear and Causey suffered no prejudice from the exercise of the chancellor's discretion to set aside the default. There was no valid trust. "Prejudice" does not include the loss of rights that were obtainable only by default.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF SIMPSON COUNTY IS AFFIRMED. ALL COSTS ARE ASSESSED TO THE APPELLANTS.
KING, C.J., BRIDGES, P.J., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.